### Nicholas **RAPKO**

v.

### TRANSPORTACION MARITIMA MEXICANA, S. A.

### No. 35235.

United States District Court
E. D. Pennsylvania.

Dec. 6, 1967.

Freedman, Borowsky & Lorry, by Avram G. Adler, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, by Harrison G. Kildare, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH S. LORD, III, District Judge.

In this diversity action, plaintiff is a citizen of Pennsylvania and defendant is a citizen of Mexico, with its principal place of business in Mexico.

On August 12, 1963 plaintiff was working as a longshoreman in the employ of J. A. McCarthy Company unloading bales of sisal from the hold of defendant's vessel, S.S. Monterrey. Plaintiff was a hold man in a 22 man gang working the after end of No. 2 hold. After clearing the

square of the hatch to create a space approximately "man high," the gang was starting to unload the cargo from the wings.

The cargo consisted of bales of sisal and bagasse approximately 2 to 3 feet by 2 to 3 feet by 4 to 5 feet, weighing from 300 to 500 pounds each. The bales were held together by binding twine made of inferior fibres of sisal. To describe the unloading process, it is best to start with a large metal ring. Attached to and leading from the ring were two lines, and to each of these two lines, in turn, were attached eight other lines, each of which had a hook, called a "cork hook," at its end. There was thus a total of 16 hooks. These were hooked through the binder twine holding the bales together, two hooks to a bale. When eight bales were thus hooked, the metal ring was slipped over the large cargo hook or pendant at the end of the runner to the winch and the eight bales were then lifted from the hold. The hook assembly was furnished by J. A. McCarthy Company.

Immediately before the accident, plaintiff and other members of his gang had hooked eight bales, the signal to hoist had been given by the deck man, and the load had started up. Plaintiff was standing as far under the coaming of the hatch as possible. After waiting for an interval, plaintiff stepped out into the square of the hatch to determine whether the load was clear, and at that moment the binder twine on one of the bales being lifted broke. The bale dropped from eight to ten feet, striking the plaintiff on the head.

Plaintiff was dazed and was at first unable to stand. With the help of other crew members he finally got to his feet and was assisted from the hold. After going to the pier clinic, he was taken to St. Luke's Hospital where x-rays were negative. Plaintiff was given medication, but was not admitted to the hospital. He had pains in the back of the neck and his chest felt "as if it had dropped two inches." About three days later, plaintiff began to experience severe headaches and pain radiating from the back of the neck down both arms and into the fingers. He was out of work for six weeks during which he was treated as an outpatient at St. Luke's Hospital.

As a result of the accident, plaintiff suffered a herniated cervical disc. After his initial six weeks disability, he has continued to work with intermittent periods of disability, but always with pain. He has felt compelled to work because of his wife and seven children. The pain has been such that plaintiff, a very moderate drinker before the accident, has turned increasingly to alcohol for relief. Plaintiff is now 43 years old, with a life expectancy of 29.1 years. His present condition is permanent unless he undergoes a serious operation, which he is afraid to do. I find that plaintiff's fear of cervical laminectomy is justified.

Before the accident, plaintiff was a strong and very able worker. After the accident, he was unable to lift as well or work as fast. He has sustained a permanent future impairment of earning power. He has incurred to date a total of $405.40 in medical expenses.

■ There was ample testimony, which I accept completely, that the use of hooks for unloading this type of cargo was improper and unsafe. Proper methods of unloading cargo such as this are the use of slings, nets or pallets. In this case, the binding twine which bound the bales had no standard or rating to establish its safe working load and it was made from inferior fibres. Binding twine was never intended to be used as a working rope, i. e., a load-bearing rope, and its use as such in this case constituted an unsafe practice. See 29 C.F.R. § 9.81(e). The accident occurred, of course, because the rope was of insufficient strength to support the weight of the bales when hoisted by the hooks. Thus, the accident resulted from an unseaworthy condition of the vessel which was created by the means and methods used by the stevedoring company to unload the bales.

■ Plaintiff's work demanded that he be in the hold. Before the accident, he had retreated as far beneath the protec-

tion of the hatch coaming as he could. He remained there until the load would normally have been on deck and then, when he stepped out to determine whether the load was clear, he was struck immediately by the falling bale. I do not find his actions unreasonable.

The foregoing may be considered my findings of fact.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter. 28 U.S.C. § 1332(a) (2).

2. Plaintiff was injured as a result of the unseaworthy condition of the S.S. Monterrey created by the means and methods used by the stevedoring company to unload the cargo.

3. Plaintiff was not guilty of contributory negligence.

4. Plaintiff is entitled to judgment against defendant in the amount of $30,405.40.